STAHL & JAEGER, Respondent, v. LOUIS SATENSTEIN, Individually and Trading under the Firm Name and Style of AMERICAN BOOK BINDERY, Appellant, Impleaded with PRINTERIAN REALTY CORPORATION, Defendant.

First Department, December 3, 1920.

Landlord and tenant — lease of floor in loft building — suit to restrain landlord and prior tenant from placing signs on outside of building — constructive notice — lease reserving to landlord control of outside walls — outside walls and roof not included in lease.

In an action to restrain the defendants, the owner and a tenant of a loft building, from placing any signs on the outside wall of said building abutting upon the floor leased by the plaintiff it appeared that the lease to the defendant tenant, which was duly executed and recorded before that to the plaintiff was executed, gave to said defendant the right to paint signs on the outside walls of the building within certain limits and thereafter the landlord granted permission to the said defendant to paint signs on that part of the outside walls of the building inclosing the staircases, elevators and fire towers of said building; that the lease to the plaintiff expressly provided that it should not have the right to place any sign whatever on the outside walls of the building except the placing of an appropriate sign at the entrance of the building and except such as might be consented to in writing by the landlord; and that the said defendant tenant did place certain signs upon the outside walls of the building at the part occupied by the elevators, staircases and fire towers and abutting the floor occupied by the plaintiff.

Held, that the defendant's lease having been recorded the plaintiff must be deemed to have had constructive notice thereof.

The landlord acted within its rights in granting to the defendant the right to place the sign upon the building to which the plaintiff objects.

The landlord reserved the right to control the advertising space on the outside walls so far as the plaintiff was concerned.

Moreover, where a building is leased by a landlord to a tenant the outside walls and the roof of the building are not included in the demise; said walls and roof being for the common use of all the tenants, they are reserved to the landlord, and at all times remain under his control.

Furthermore, the entire portion of the walls on which the said signs were placed was opposite the fire towers, staircases and elevators of the building, a part of the building maintained by and under the control of the landlord.

APPEAL by the defendant, Louis Satenstein, individually, etc., from a judgment of the Supreme Court in favor of the

plaintiff, entered in the office of the clerk of the county of New York on the 28th day of June, 1920, upon the decision of the court rendered after a trial at the New York Special Term.

*Joseph Fischer* of counsel [*Frederick Hemley* with him on the brief], *House, Grossman & Vorhaus*, attorneys, for the appellant.

*Donald C. Muhleman* of counsel [*Thomas F. Dougherty* with him on the brief], for the respondent.

MERRELL, J.:

This action was brought by the plaintiff, a domestic corporation, against the defendants Louis Satenstein, individually and trading under the firm name and style of American Book Bindery, and Printerian Realty Corporation, to restrain said defendants from placing any sign or signs upon the outside of the east or west walls of the loft building at 406–426 West Thirty-first street in the borough of Manhattan, city of New York, and particularly on that part of both of said walls abutting upon the thirteenth loft or fourteenth floor of said building occupied by the plaintiff, and restraining the said defendants from maintaining any signs thereon and from continuing to permit the use of said part of said walls for the purpose of such sign painting.

The defendant Printerian Realty Corporation is the owner of the loft building in question, having received title thereto from a corporation known as Four Hundred and Six West Thirty-First Street Company, Inc., which last-mentioned corporation formerly owned said building. The defendant Louis Satenstein is the lessee of the first, second, third, fourth, fifth and sixth floors and the east half of the seventh floor of said building, occupying the said premises and conducting therein the business of book binding under the firm name and style of American Book Bindery. The lease under which said defendant occupies said premises was executed on May 28, 1914, and contained the following provisions:

" 16th. The party of the second part and his sub-tenants shall have the privilege of placing and keeping appropriate signs at the entrance of said building, of similar kind as used

by the other tenants, and shall have the privilege of placing a sign of appropriate character advertising his said business and that of those holding under him, on the east and west walls of the said building; the total sign space occupied by all tenants in said building shall be limited to the upper eighty (80) feet of the side walls, but shall extend the entire width thereof; the party of the second part shall be entitled to the exclusive use of the lower one-third of the entire space on the side walls set aside for sign purposes.

" The party of the second part and his sub-tenants shall have the right to erect across the front of the said demised premises, appropriate wire signs with raised gold letters, in either script or square letters, not more than four feet in height.

"And in case the party of the first part or its representatives shall deem it necessary to move any such sign or signs, in order to paint the building or make any necessary repairs, alterations or improvements in or upon the said building or any part thereof, it shall have the right to do so, providing it causes the same to be removed, and replaced at its own proper cost and expense whenever the said repairs, alterations or improvements shall have been completed."

In addition to the privilege thus accorded the defendant by the Four Hundred and Six West Thirty-First Street Company, Inc., by said lease, the said company, on June 25, 1915, granted to the said defendant permission to paint a sign upon the building in accordance with the following communication addressed to said defendant:

" NEW YORK, *June 25th*, 1915.

"AMERICAN BOOK BINDERY,

" Mr. LOUIS SATENSTEIN,

" 406–26 West 31st Street,

" New York City:

" In consideration of your this day renting the 6th floor in the building 406–426 West 31st Street, we hereby give you permission insofar as we may legally do so, to paint a sign with the name and business of your firm and also any sub-tenants you may now or hereafter lease to — said sign to be painted on the east and west walls of the building 406–426 West 31st Street, provided the sign is confined to that part of the walls enclosing fire-towers, stairs and elevators, and does not cover

a space thereon more than 40 feet down from the level of the roof beams — but also to include walls above roof beams — on the expressed understood condition that you hold us or our assigns harmless from any law suits or consequential damage, which the painting of the said sign may cause to be sustained or assessed against us.

" Very truly yours,

" FOUR HUNDRED AND SIX WEST THIRTY-FIRST STREET
     COMPANY, INC.,
          " (Signed)          THOMAS A. LARKIN, *Pres.,*
                              " EDWARD L. LARKIN, *Sec'y.*

" TAL–ELL/LF "

In addition thereto the said defendant thereafter obtained from the owner of the building further permission as contained in the following communication from its attorneys:

" *May* 23, 1919.

" THE AMERICAN BOOK BINDERY,
          " 406–426 West 31st Street,
                    " New York, N. Y.

" GENTLEMEN.— In reply to your letter of yesterday we beg to enclose herewith a copy of the letter which we understand the former owner of the premises 406–426 West 31st Street wrote you on June 25, 1915.

"Although there has been a complaint from one of the other tenants we see no objection to your painting a sign on the upper forty (40) feet of the East and West walls, provided that it be painted only on that part of the walls enclosing the elevators, staircases and fire towers and upon the further condition that you hold the owner harmless because of any damages sustained by it as stated in the letter.

" We have instructed Messrs. James N. Wells' Sons to this effect, but before anything is done we would like to have you confirm our understanding that it will be done pursuant to the terms of the above mentioned letter.

" Yours very truly,

" MORRIS & McVEIGH.

" CSMcV: S.
" Enc."

Thereafter and in the month of May, 1919, the said defendant Satenstein painted or caused to be painted upon the outside east and west walls of the premises at 406–426 West Thirty-first street certain signs advertising his business, a portion of which were outside the east and west walls opposite the fourteenth floor of said building, a portion of which floor was occupied by the plaintiff.

The said lease to the defendant was duly recorded in the office of the register of the county of New York on the 16th day of July, 1914.

On May 14, 1915, the 406 West Thirty-first Street Company, Inc., the corporation then owning said property, executed to the plaintiff corporation a lease of the entire thirteenth loft or fourteenth floor of said building for the period of nine and five-twelfths years, said term to commence November 1, 1915, and to end on April 1, 1925, said premises to be used and occupied by the plaintiff for lithographing and not otherwise. The lease from the said 406 West Thirty-first Street Company, Inc., to the plaintiff contained the following provision:

" *Sixteenth.* The tenant shall neither place nor allow nor cause to be placed any sign or signs of any kind whatsoever in or about the entrance of said building or· on said building except in and at or upon such place or places as may be indicated by the landlord and consented to by him in writing, except that the tenant shall have the right of putting an appropriate sign indicating its business at the entrance of said building of similar design, style and size of that used by the other tenants."

Under the terms of the lease to plaintiff the landlord covenanted and agreed to keep the building open and in operation at all times, day and night, including Sundays and holidays, and to furnish heat in the said premises, in the winter season of about eighty degrees in the daytime and about sixty degrees at night, and to furnish· elevator service to the capacity of installation from seven-thirty in the morning to six-thirty p. m., on each business day, and at all other times on request after due notice, without charge to the tenant. The landlord also agreed to furnish electric current for light and power purposes at the price of four cents per kilowatt hour, payable monthly and collectible from the tenant as rent.

It is the contention of the plaintiff that while its said lease restricted plaintiff in the use of said premises to the extent that it might place no sign thereon, except at such place or places as might be indicated by the landlord and consented to by him in writing, except that the tenant should have the right of putting an appropriate sign indicating its business at the entrance to said building of similar design, style and size of that used by other tenants, nevertheless that the landlord by such provision did not reserve to itself the right to use the other walls opposite the loft occupied by plaintiff nor to permit the use thereof by the defendant for sign purposes.

The court granted the plaintiff the relief asked by it, and judgment has been entered upon the decision of the court restraining the defendant Printerian Realty Corporation from permitting or continuing to permit any printing, lettering or advertising matter of any nature or description other than the advertising matter of the plaintiff to be or remain on any part of the outside wall or walls of said premises directly adjacent to, inclosing and abutting upon the thirteenth loft or fourteenth floor of said premises occupied by the plaintiff, and also enjoining and restraining the defendant Satenstein and as well the defendant Printerian Realty Corporation from placing upon the outer wall or walls of said premises immediately adjoining and inclosing the thirteenth loft or fourteenth floor any printed, painted or other advertising matter or signs or placards which shall in any manner incumber or be applied to said outside wall or walls immediately adjoining the inside space occupied by the plaintiff in said premises. Said judgment further ordered, adjudged and decreed that the said defendants and each of them forthwith remove from said exterior walls every sign, printing, painting or marking which may have been placed thereon by said defendants or either of them, so that said exterior walls may be free and clear of any advertising or printed matter of any nature or description.

I think under the facts as disclosed by the evidence in this case the court was not justified in granting the plaintiff said relief. The lease of the defendant Satenstein was executed and recorded nearly a year prior to the lease to the plaintiff. By the terms of the lease of said defendant, appellant, and

with the express consent of his landlord, he was permitted to place upon the easterly and westerly walls of said building the sign concerning which the plaintiff complains. Defendant's said lease was recorded in the office of the register, and the plaintiff must be deemed to have had constructive notice thereof. By the lease granted by the landlord to the plaintiff, plaintiff was expressly restricted in the use of the portion of the building leased to him to the extent that he was not permitted or allowed to place any signs upon the building in any place whatsoever, save at such places as might be indicated and consented to by the landlord in writing, and except that the said plaintiff might place an appropriate sign indicating his business at the entrance to the building. The plaintiff has never attempted to put any sign upon the building contrary to said provision of its lease. On June 25, 1915, the landlord of the building wrote to the defendant Satenstein that in consideration of his that day renting the sixth floor of the building in question permission was given him to paint a sign with the name and business of his firm or of any subtenants to whom he might then or thereafter lease the property, said sign to be painted upon the east and west walls of the building, provided " *the sign is confined to that part of the walls inclosing fire towers, stairs and elevators,*" and did not cover a space thereon over forty feet down from the level of the roof beams, but also to include walls above roof beams. On May 23, 1919, the attorneys for the defendant Printerian Realty Corporation, which then owned said property, in response to a request from the defendant, appellant, sent to him a copy of the letter of the 406 West Thirty-first Street Company, Inc., written to said defendant June 25, 1915. The attorneys for said defendant Printerian Realty Corporation, in their said letter of May 23, 1919, stated, as follows: "Although there has been a complaint from one of the other tenants we see no objection to your painting a sign on the upper forty (40) feet of the East and West walls, *provided that it be painted only on that part of the walls enclosing the elevators, staircases and fire towers;* * * *.*"

In thus granting to the defendant the right to place its sign upon the building, to which plaintiff objects, I think the landlord acted well within its rights. The restriction contained

in plaintiff's lease against placing signs upon the building did not apply to the outer walls opposite the thirteenth loft, but included the entire building, save that the plaintiff might place its sign at the entrance of the building. The rights granted to the defendant Satenstein by his lease with regard to signs differed widely from the provisions contained in the lease of the plaintiff. In Satenstein's lease it was provided that " the total sign space occupied by all tenants in said building shall be limited to the upper eighty (80) feet of the side walls, but shall extend the entire width thereof," and also, " The party of the second part shall be entitled to the exclusive use of the lower one-third of the entire space on the side walls set aside for sign purposes." The defendant Satenstein and his subtenants were also granted the right to erect across the front of the leased premises wire signs not to exceed four feet in height.

The restriction contained in plaintiff's lease that he is to place no sign on the building is apparent. The landlord had theretofore executed to Satenstein a lease providing that the total sign space occupied by all of the tenants of the building would be limited to the upper eighty feet of the side walls, and giving to said Satenstein the exclusive use of the lower one-third of the entire space on said side walls set aside for sign purposes. Considering the restriction placed upon plaintiff's use of the building for sign purposes contained in its lease, the effect was that the plaintiff might place no sign upon any part of the building, except as was indicated by the landlord, which must be within the upper eighty feet of such walls reserved for the common use of all the tenants, but as to the plaintiff the landlord might assign any part of said eighty-foot space to any tenant and the plaintiff could not complain that some other tenant had been given a space abutting its loft. Thus, the landlord, I think, clearly reserved the right to control the advertising space on the outside walls. The restriction contained in the lease to the plaintiff was not merely a limitation, as stated by the trial court, but reserved to the landlord the right to control the same, and to the extent of such reservation the plaintiff acquired no right concerning said space.

Moreover, I think the weight of authority is to the effect

that where a building is leased by a landlord to a tenant the outside walls and the roof of the building are not included in the demise, said walls and roof being for the common use and benefit of all of the tenants, and that said walls and roof are reserved to the landlord and at all times remain under his control. (*Tallman* v. *Murphy*, 120 N. Y. 345; *Peil* v. *Reinhart*, 127 id. 381; *Dollard* v. *Roberts*, 130 id. 269; *Bagley* v. *Rose*, 110 Mo. App. 344, 347.) In the last-mentioned case it was said: " Obviously, the presence of a number of tenants in a single building restricts the extent of the demise to each and the rights and privileges incident thereto. The rights of all must be so curtailed that they will not interfere with each other. In this building all of the tenants possessed the right to the support and inclosure of the south wall, including the part thereof claimed by plaintiffs. It would lead to absurd conclusions to say that any tenant was vested with title to any portion of the outer walls. The title to them remained in the owner of the building, whose duty it was to maintain them for the benefit of all of the occupants."

The case of *Peats Co.* v. *Bradley* (166 App. Div. 267) was quite recently decided by this court. In the opinion in that case, McLAUGHLIN, J., said (at p. 268): " The question presented by the appeal is whether that part of the roof which is over the premises occupied by the plaintiff is included in its lease and forms a part of the demised premises. If so, the erection and maintenance of the sign of which plaintiff complains constitutes a continuing trespass and entitles plaintiff to the injunctive relief which it has obtained. The plaintiff is but one of five tenants who occupy the building. They are all sheltered by a single continuous roof. There is no means of access to the roof from plaintiff's store or from any of the other stores in the building. Access to it is possible only by a ladder from a hallway in the center of the building. The hallway is in the exclusive control of the landlord. The lease does not, in terms, refer to the roof or any part of it — the demised premises being described merely as ' the store and basement.' Nor does it contain any provision as to whether the repairs to the roof are to be made by the landlord or tenant. When a lease is thus silent, the general rule is that the obliga-

tion to make repairs rests upon the tenant. (*Witty* v. *Matthews,* 52 N. Y. 512.) This rule, however, is subject to an exception that when a number of tenants use in common the halls, stairways or elevators of a building, or are protected by a common roof, the duty to keep the same in repair devolves upon the landlord. * * * But this part of the roof is not for the sole benefit of the plaintiff any more than the balance of the roof is for the sole benefit of the other tenants. The entire roof exists for the common benefit of all the tenants, and in the absence of an agreement to the contrary, the landlord is obligated to keep the same in repair for them. * * * Plaintiff's lease contains a restriction ' That the tenant shall not expose any sign, advertisement, illumination or projection in or out of the windows or exterior or from the said building or upon it in any place, except * * *.' This provision was for the benefit of the landlord and not, as contended by the respondent, as a recognition of plaintiff's right to the control of the roof. It is against, and not in favor of, such contention."

I can see no distinction between the *Peats Co.* case and the case at bar. It seems to me that the argument is the same, whether there is involved a roof to a building or its side walls. In both cases the outside surface of the building remains under the control of the landlord.

In *Bagley* v. *Rose* (*supra*) it was also said (110 Mo. App. 344, 347, 348): " It has been said by some authorities that tenants in buildings of this character whose rooms are enclosed by an outer wall have the right to use such portion of the exterior thereof for the placing thereon of their signs; but such right is a privilege acquired from universal custom — a mere incident to, not a parcel of the demised premises — and consequently not derived from title. The landlord may deprive his tenant of such privilege by stipulation in the lease, in which case the ownership of the walls remaining in him, he may use their outside surfaces for purposes of revenue."

But it seems a still more serious obstacle lies in plaintiff's way of securing the equitable relief which it asks in this action. An examination of the floor plan of the building in question convinces me that the plaintiff never had under its lease any control over that part of the easterly or westerly walls of said

building upon which said signs were painted. The floors of the building are typical. The entire portion of the easterly and westerly walls of the building upon which the defendant had placed his signs was opposite the fire towers, elevators and staircases of the building. As has been suggested, these elevators, fire towers and staircases were maintained by the landlord, and the lessees of the building never had any control thereof. At all times the control of the walls of the building, inclosing said elevators, staircases and fire towers surely remained with the landlord. These walls surrounded appurtenances which the landlord had provided for and which were essential to the common use of the building by all of its tenants. The permission granted by the landlord to the defendant Satenstein to place his sign upon the upper forty feet of said walls contained an express proviso " that it be painted only on that part of the walls inclosing the elevators, staircases and fire towers." The evidence shows that in painting upon said building Satenstein did not exceed the privilege thus accorded him by the landlord.

Under these circumstances I think it cannot be said that the plaintiff has any right to control the easterly and westerly walls of the building at the point where said defendant has placed such signs. It seems to me that the judgment appealed from should be reversed, with costs, and that the defendant, appellant, should have judgment dismissing the plaintiff's complaint upon the merits, with costs. An order should be entered in accordance therewith, and therein as much of the twelfth finding of fact contained in the decision herein as finds that the defendant Satenstein employed painters and other persons to place said sign upon said walls " immediately adjacent to and covering the premises occupied by the plaintiff on the thirteenth loft or fourteenth floor," should be reversed, and in place thereof a finding should be made by this court that the sign was painted on those parts of said walls which inclosed the elevator shafts, stairways and fire towers, over which appurtenances the plaintiff has no control. The decision should also contain an additional finding to the effect that the lease of the defendant Satenstein was duly recorded in the office of the register of the county of New York on the 16th day of July, 1914. All of the conclusions

of law contained in the decision herein should be reversed and new conclusions substituted in place thereof in accordance herewith.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.