MARY J. SIMMONS, Respondent, v. KANSAS CITY, CLINTON & SPRINGFIELD RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 5, 1919.

1. **DAMAGES: Jurisdiction: Title to Real Estate: Constitution.** An action for damages in trespass against a railroad company for burning a barn on plaintiff's land, does not involve the title to real estate as contemplated by the Constitution and appellate jurisdiction is in the Court of Appeals.

2. ———: **Trespass: Setting Fire: Circumstantial Evidence.** In an action to recover damages for burning a barn by a passing railway locomotive, it is not necessary that direct and affirmative evidence be had to show that the engine set the fire; circumstantial evidence will suffice.

3. ———: **Possession: Title: Wrongdoer.** In an action in trespass against a railroad company for burning a barn on land adjoining the track, possession in plaintiff, without title, will support the action as against a wrongdoer who has no authority from the true owner.

4. ———: **Landlord: Tenant: Possession: Freehold: Action.** An action in trespass against a railroad company for injury to the freehold as by burning a barn on lands adjoining the track may be maintained by a landlord, claiming title, though the actual possession be in the tenant, and though the real title is in a third person.

Appeal from Cass Circuit Court.—*Hon. Ewing Cockrell,* Judge.

AFFIRMED.

*A. A. Whitsett* and *Heidelberger & Houston* for respondent.

*John H. Lucas, Wm. C. Lucas* and *D. C. Barnett* for appellant.

ELLISON, P. J.—Plaintiff claiming to be the owner of certain land on which was situated a barn adjoining defendant's right of way in Cass County and charging that the barn was set on fire and destroyed by one of defendant's passing locomotives, brought this action for damages under the provisions of section 3151, Revised Statutes 1909. She recovered judgment in the trial court.

Defendant insists that we should transfer the case to the Supreme Court on the ground that it involves the title to real estate and jurisdiction is in that court under art. 6, sec. 12 of the Constitution. The idea advanced is that the barn was a part of the realty and that it required proof of title for plaintiff to make out her case. But the value of the barn which is now being sought is personalty and a judgment in plaintiff's favor does not affect or involve the title to the land. If it were a fact that it is necessary to make proof of title in plaintiff as against this defendant, it does not follow that a money judgment would involve or affect the title. In an ordinary action for damages in trespass on land for cutting timber or carrying away the soil and it should be necessary to prove title, yet a judgment for the damages resulting from carrying away these articles, thus separated from the realty, would not affect the title. We therefore overrule the request to transfer.

On the merits we find there was evidence tending to show title to the land in the plaintiff, that it was rented by her to a tenant and that the barn was set on fire by sparks escaping from one of defendant's engines and that the trial court was thereby justified in submitting the case to the jury. It was shown that there was hay, sheaf oats and shredded fodder in the barn. There were no stoves or other place for keeping fire therein. No fire was seen in or about the barn. A passenger train passed the barn about three o'clock in the afternoon of December 20, 1915, stopped at a station three miles away, that it took about six minutes to run

from the barn to this place and that on arriving there the barn could be seen to be on fire. Smoke was pouring out. A man working about the barn observed no sign of fire until after the train passed. He had started off with a team of mules and in about ten minutes after the train passed looked back and saw the barn was on fire. He also testified that there were several windows open on the side of the barn next to the railroad track and that there was hay by these windows, and that the wind was in the direction of the barn.

In cases of this character it is not necessary to show by direct and affirmative evidence that the fire was set by sparks from the locomotive. Circumstantial evidence will suffice, if it is of such character as to justify a reasonable inference that the fire was caused by sparks from a passing engine. In this case strong probability arises against the defendant from the fact that it was affirmatively shown to be highly improbable that the fire could have come from any other sources. [Hudspeth v. Railroad, 172 Mo. App. 579, 585, 586; Markt v. Railroad, 139 Mo. App. 456; Campbell v. Railroad, 121 Mo. 340.]

Defendant claims that plaintiff failed to prove that she was the owner of the barn and that therefore its demurrer to the evidence should have been sustained. The facts are that the land on which the barn was situated was formerly owned by plaintiff's minor grandchildren; that the curator of the estate of the children on proceedings in the probate court of Cass county was ordered by that court to sell the land. That he sold it to this plaintiff and on receipt of the purchase money, executed to her a deed for the premises. On the other hand plaintiff earnestly insisted at the argument and in briefs that such title with possession gave her a *prima-facie* right.

But defendant claims that such sale was void and did not divest the title of plaintiff's grandchildren; and that plaintiff recognized that the children were making some claim to the land by instituting an action in 1917 against them to quiet title, which action was

pending when the present action was tried. Defendant makes no pretence to any privity with these children or of any authority under them, and it stands before us as a mere naked wrongdoer, a condition which, we think, it seeks to avoid.

But as we have just stated, plaintiff insists that the title she had, with possession, gave her, at least, a *prima-facie* right.

It is said in Inhabitants of Barnstable v. Thatcher, 3 Met. 239, that in trespass it is not a question of title, and the plaintiff is only required to "prove such a lawful possession of the land as the defendant has no right to disturb; but any possession is a legal possession against a wrongdoer." In Watts v. Loomis, 81 Mo. 236, it is said that: "It has long been settled, that possession alone is sufficient to maintain an action of trespass as against a stranger." And to that statement the court added what we have quoted from Inhabitants of Barnstable v. Thatcher, supra, that any possession is a legal possession against a *wrongdoer*. The party in possession may maintain trespass against any one save the real owner. [Wilson v. Hinsley, 13 Maryland, 64, 73, 74.] "Justice and policy both strongly require that a bare tort-feasor, who has invaded the quiet possession of another, should not be allowed to shield himself under the title of a third person, between whom and himself there is no privity nor connection." [Branch v. Doane, 18 Conn. 233, 243; Chambers v. Donaldson, 11 East 66.] It is a settled rule of law, that any actual possession of real estate is sufficient to enable the party in possession to maintain *quare clausum fregit* against a stranger, and every one must be deemed a stranger, who can show no title and no elder posession." [First Parish in Shrewsbury v. Smith, 14 Pick. 279, 301.] The following additional and forceful statement in that case (p. 302) is approved in Reed v. Price, 30 Mo. 442, viz., "It is very clear, that a mere stranger cannot question the right of one in possession, or put him upon the proof or disclosure of his title. Nothing is more familiar than

the rule, that where one brings an action against another, the plaintiff must prove a title or be nonsuited; the defendant is not to be called on to show his title. And there seems to be no reason why a stranger should be placed in a better situation, by taking the matter into his own hands, ploughing land, taking crops, or otherwise interfering with the right of the party in possession. Such a proceeding would be as contrary to sound policy as to legal principles. There are many cases, where acts have been done intended to constitute a good and valid title, where grants have been made, and titles transferred, but where, through negligence, ignorance or mistake, especially where corporations, public bodies, and official agents are concerned, such titles cannot be legally proved. Upon a close investigation, a flaw in the title would be discovered. If a lawful owner in whom the legal title remains, chooses to interfere and set up his legal claims, the law, in consistency with its own rules in regard to the transmission of title, may be compelled to admit his claim. But if such owner, upon considerations of propriety, equity and conscience, choose to acquiesce, and permit the party in possession to retain that possession, notwithstanding any defect of title, by what rule of law, or equity or sound policy, can a mere stranger be allowed to interfere and by his own act violate the actual and peaceable possession of another, and thereby compel him to disclose a title, in the validity or invalidity of which such stranger has no interest?" We note that, for a reason not stated, one Judge dissented in Reed v. Price and one not sitting, it left the opinion supported by only one Judge; but the case has been several times cited with approval, and we accept it, containing as it does the undoubted law, as authority. [Watts v. Loomis, 81 Mo. 236; Lindenbower v. Bentley, 86 Mo. 515; Brown v. Hartzell, 87 Mo. 564.]

But as we have stated above, the land was rented by plaintiff to a tenant and he had an ordinary tenant's actual occupancy of the land. That, however,

will not deprive the foregoing considerations from application to plaintiff; since the law is, that where injury is to the freehold, a landlord claiming title, may have trespass against a wrong doing stranger who, as in this case, injures such freehold. [Parker v. Shackelford, 61 Mo. 68, 72; Austin v. Coal Co., 72 Mo. 535, 543; Cramer v. Groseclose, 53 Mo. App. 648, 650; Wilson v. Hensley, 13 Maryland, 64; Daintry v. Brooklehurst, 3 Welsby, Hurlstone & Gordon 207 (3 Ex. 207).] Defendant, being a wrongdoer and a stranger, has no right to question plaintiff's interest by the claim that some third person has a better title.

It may be suggested that if the party in lawful possession under claim of title where the true title is in another, may maintain an action against a stranger who commits trespass on such possession, and recover full value of the thing destroyed as damages, such stranger might be called upon by the true owner and made to respond a second time. But that would not follow. It may be assumed that the true owner is aware of the possession of his property by another and that when a trespasser does it an injury such owner will protect his own interest, but if he chooses to acquiesce and permit the party in possession to continue, it does not concern the mere wrong doing trespasser. [First Parish in Shrewsbury v. Smith, supra, 303.] So in a case like the one before us, if the plaintiff should recover the full value of the barn, and if, as defendant claims, there is an outstanding superior title, those having such title may have their rights (if any) in the damages paid plaintiff adjusted when, if ever, they assert their title.

Objection was made to the testimony given by one or more of plaintiff's witnesses on the subject of the fire starting from the defendant's engine, on the ground that such witnesses were stating a conclusion. We think the trial court properly overruled such objections.

What we have written herein disposes of objections made to the ruling of the court on instructions.

The judgment is affirmed. All concur.